The next case on the call this morning, Fiegel v. Carrera, No. 109294. Counsel. Good morning. By way of introduction, my name is Alex Salerno. Good morning. I represent Mr. Carrera. In this case, we have not an unusually unique circumstance, but at least a unique circumstance, inasmuch as the facts are essentially agreed and are very clear. Carrera pled guilty to what the sentencing judge called a very modest violation and transaction, was sentenced to four-ten probation, which is a light sentence. And at the time of his plea and prior to his plea, he was advised that immigration was not an issue and that no problems would ensue pursuant to his plea. In fact, on the record, his attorney was asked by the judge, no immigration problems, nothing like that, and the attorney responded, no, judge, it's not an issue. So the patent misadvice by the attorney is on the record. Mr. Carrera listened to that advice, pled guilty, and found himself, after completing his probation, when he was in the process of getting a new green card because he had lost his, being subject to deportation and taken into custody. The procedure is a bit more complicated because the circuit court ruled that Mr. Carrera had standing, but that his lawyer was not ineffective, and the appellate court has ruled that Mr. Carrera does not have standing. I submit and I ask this court to reverse the ruling of the Court of Appeals and reverse this case to the circuit court and direct them to allow Mr. Carrera to withdraw his guilty plea. Would we have to reverse People v. Paris as well? I think, yes. I think there's a number of cases that disagree with the ruling in SAC. What about Stardes Isis? I'm sorry? Stardes Isis. Well, I think that Farias is different factually, number one, because in Farias there was a failure by the attorney to advise his client as to whether or not there were immigration consequences. This court in Davis and other cases and the appellate courts have ruled that there is a difference between misadvice and failure to give advice, or advice like in Radjic Paul where the judge said, I'm going to make no promises on what the immigration consequences might be. Tostado, where he filed a motion asking to withdraw the guilty plea and then later said he didn't have knowledge. In Farias, the lawyer failed to inform his client whether or not there were going to be any immigration consequences,  Well, the advice is a different argument than his standing to challenge, isn't it? No, I think the advice, well, from the fairness issue and from this court's opinions in Davis and cases of that nature, I believe that it's an important issue. I'll concede that Padilla, in terms of effectiveness of counsel, the U.S. Supreme Court has said, in terms of effective assistance of counsel, there's no difference between misadvice or non-advice. But I think when it comes to the issue of fairness and the issue of the ruling of the court and the issue of standing to contest or standing to file a motion, advice is very important because you rely on your attorney's advice, which establishes under Strickland that there's an ineffective attorney, period. Under Padilla, Padilla has said now, the U.S. Supreme Court has said, that misadvice or non-advice establishes that you're an ineffective lawyer. Is this a question of statutory interpretation? I'm interpreting the provisions of the Post-Conviction Act. I don't necessarily think so. I think, in a sense, it's weird, for lack of a better term, because incarcerated in the penitentiary has never meant incarcerated in the penitentiary. Has it ever meant? It's never meant that. Well, incarcerated in the penitentiary is what the statute says. Right. So I don't know if it's an interpretation. But has it been interpreted the way you would ask us to interpret it? Well, I think it's never been interpreted as being in jail. Incarcerated in the penitentiary strictly means being incarcerated in the penitentiary. But every case has said, if you're on probation, the Post-Conviction Act applies. If you're on supervision, it applies. If you're on parole, it applies. If you have some sort of pending infirmity based upon a conviction, no court has ever said you have to be in jail. Does the defendant have to come within the Post-Conviction Act to be afforded relief? Yes. Yes. And I believe he comes under the Post-Conviction Act because of the Padilla case, for sure. Let's talk about that for a minute because Justice Freeman mentioned the case law. And I believe you're right. I mean, Padilla has recognized that the failure to inform or misinform regarding the deportation consequences to constitute ineffective assistance to counsel. But that decision doesn't stand for the proposition that that confers standing on defendant when he is not in custody for purposes of the Post-Conviction Hearing Act, right? Well, that portion of it does not, no. But the portion of the opinion, I don't know if you had another question. Well, in addition, even if this Court found that the defendant has standing, you really have waived your review of the ineffective assistance claim, right? No. I don't think so because at the time of the ruling by the Court, I had submitted to the Court that I was prepared to show prejudice, but I was waiting for the third prong of the analysis to do so. And we were on the second prong of the hearing. But in addition, I believe under Padilla, Padilla has said that I win, I mean, that it's ineffective assistance of counsel if you plead guilty based upon misadvice of your attorney. All right. That leaves us with the standing requirement. Right. And you mentioned that there's some cases in conflict with SAC. Well, SAC is actually an anomaly, isn't it? I mean, as far as my research goes, all other appellate court decisions, as well as federal decisions, have found that a defendant does not have standing to file a post-conviction petition or in federal cases a habeas corpus if he is no longer in custody. So what are we left with? Well, we're left with SAC, which I believe is sound. I wouldn't categorize it as an anomaly. And now, thank goodness for Mr. Carrera, we're left with Padilla. The U.S. Supreme Court has said, and that's an answer to Your Honor's question, in the standing issue, Padilla has basically decided in favor of Mr. Carrera in terms of standing. And the reason is that they have now determined that because the plea of guilty and the advice concerning deportation issues is so intricately related. But counsel, haven't we always held that that was a collateral consequence? It really had nothing to do with his case, per se, and that the deprivation of assistance of counsel would have to be within his case. And this was a collateral consequence of that. It had nothing to do with the case. In fact, the trial court couldn't do anything about the deportation at all under the circumstances. And you mentioned SAC. Well, SAC failed to discuss the Trigona case. Well, the appellate courts have traditionally held that it's a collateral consequence. Right. But Padilla, the U.S. Supreme Court has said that it's not a collateral consequence. The U.S. Supreme Court has said in Padilla v. Kentucky, exactly the same facts as herein, pled guilty based upon the advice of his attorney, later filed a post-conviction petition, has said that because immigration consequences are so intricately related with the plea of guilty, that we won't make a distinction between and we won't say it's a collateral consequence. I guess I could quote it directly. That is the quote, counsel. Okay. But I'd like to get, I don't think you had a chance to finish your answer, which I am interested in, is where in Padilla it talks about conferring standing. Well, I think the statute, when the court dismisses this petition based on lack of standing, they dismiss this petition based on lack of standing because he's not incarcerated in the penitentiary, and therefore since this is a collateral consequence, the effectiveness of counsel doesn't matter and he can't file a post-conviction petition. I submit that Padilla says that this is not a collateral consequence. This is a consequence of his plea of guilty. This deportation proceeding is directly related and hinges on the advice of his attorney, and this deportation proceeding is not a collateral consequence of the plea. Therefore, the fact that he's no longer incarcerated in the penitentiary doesn't take away standing, as this Court has said. Well, now we do have to get back to Justice Perk, because doesn't Padilla actually say that it's difficult to classify as either a direct or collateral consequence? Well, it says it's difficult, but it also says that this Court has never distinguished between direct and collateral consequences when defining the scope of, quote, constitutionally reasonable professional assistance. Although removal proceedings are civil in nature, deportation proceedings are intimately related to the criminal process, which makes it uniquely difficult to categorize as either direct or collateral consequence, because that distinction is ill-suited to evaluating a Strickland claim concerning the specific risk of a deportation advice. Advice regarding deportation is not categorically removed from the ambit of Sixth Amendment right to counsel, and that competent counsel has to advise him, and this is not a collateral consequence. In this day and age, they said it's so intricately related with the conviction that counsel must inform him, and it's not a collateral consequence. So therefore, since it's not a collateral consequence, I submit that that's what Padilla says. It removes that argument that the appellate court uses in all of the cases besides SAC. And that doesn't even take into account the fairness issue, and I've distinguished the cases, the appellate court cases that counsel has brought up in the brief and the other cases, and even though SAC is different than those cases, I wouldn't categorize it as an anomaly. This court and all the appellate courts have always defined incarcerated in the penitentiary as not to mean being incarcerated in the penitentiary. So I say that Padilla specifically states that changes to immigration law have dramatically raised the stakes of a non-citizen's criminal conviction, and based upon the harsh consequences, it's not collateral, it's intricately related with the plea, and it's ineffective assistance of counsel not to advise or to misadvise. So when this attorney misadvises Mr. Carrera as to the nature and consequences of his plea immigration-wise, that's not collateral to his sentence. That's what I believe Padilla says. Even though they make a distinction that they've never discussed it, in the context of Padilla, they reversed the case. They said Padilla, they said Padilla, his plea was not a collateral consequence, that it was intricately related with his plea, and therefore, counsel has the duty under Strickland to give him real advice and correct advice. And so I believe that is analogous to the case at Barr. It's analogous to Jesus Carrera's standing issue, because this isn't a collateral issue. This isn't something that just happens. His attorney misadvises him on the record, therefore falls below the Strickland analysis of what a good lawyer should do and falls below constitutionally firm counsel, and that his incarceration in the immigration case is not a collateral consequence, so it doesn't destroy his standing because it's part of his conviction. It's something his lawyer had to do. So I believe, in a sense, standing, the only logical reason that the appellate court has ruled in all of those cases, besides SAC, that a person cannot raise, does not have standing, is because it's a separate proceeding. It's a collateral consequence. But now Padilla says, and I believe this Court should adopt that reasoning, is that it is not a collateral consequence. It is part of the plea. It's part of the case, and it's a direct result. That's what they said. It's a direct result of the consequences of his plea, even though it's a civil proceeding. It's still part of the same case. And in this case, Mr. Carrera has relied on his attorney's advice, and I believe the reasoning is sound. I believe the reasoning is sound based upon this Court's rulings in other cases, like People v. Davis and Dale, which was adopted by SAC because SAC said, We agree with the observation that courts must not prolong litigation and must recognize its defined determination. We are not, however, persuaded that the end should be elevated by avoiding injustice or work to deprive an individual of constitutional rights. That some clearly defined method must exist by which SAC could raise issue with the denial of its federal constitutional rights is fundamental. That he could be deprived of that opportunity by completing his sentence and thereby unwittingly forfeiting those rights is unreasonable. Section 122 provides a basis. The Supreme Court has declined to read, quote, But definitionally, and so fairness dictates that Mr. Carrera and people similarly situated, that can't find out as to the consequences of their plea based upon their attorney's advice, that fortuitously loses his green card and finds out years later. And I believe Padilla, based upon that, Padilla has said that it's not a collateral consequence. It's part of his plea and part of the attorney's duties under Strickland. And under Strickland, Padilla says we're not going to call it a collateral consequence. We're going to call it part of what the attorney should have done and should have done for Mr. Carrera. Mr. Salerno, I would like you to respond to the state's argument that under the statute 122, the defendant here did not have a conviction because of his section 410 probation, and therefore he would not be eligible or would not have standing to pursue this. I don't think that's a jurisdictional requirement. In fact, when I was up in front of the Court of Appeals, I argued that there may be a different application, and they specifically rejected that because of the nature of 410 probation. I think it's a non-issue. I think it's a side issue. I think the statute says that if a person is imprisoned in the penitentiary and Padilla has in all the cases have said that that's some kind of infirmity that results. So I don't think the nature of a conviction or non-conviction is going to be telling in the statutory construction because what 122 is supposed to do according to this Court's rulings and other Court of Appeals rulings is it's supposed to provide a vehicle for somebody who has something hanging over their head, regardless of what that is. And Mr. Carrera, regardless of whether the State of Illinois says it's not a conviction but the immigration service says it is, doesn't bail the State out on this one because he still has some action pending. The deportation is based upon this conviction or non-conviction, but it's based upon this case. Counsel, but isn't it just whether Tragona said deprived of liberty as opposed to having served a sentence or imprisonment or parole or whatever. I think that's what Justice Carrera was saying. Well, he's being deprived of liberty. And earlier cases in the Court of Appeals have said deprived of liberty in an immigration situation is collateral, but now it's not collateral. I'm talking about him being deprived of liberty, being sentenced to jail as opposed to probation, served a sentence. Well, all the courts have said if he's under probation or parole or supervision or some sort of court action, he doesn't have to be in jail. So what I'm saying is the fact that it's a conviction or non-conviction is of no moment because he still has, he's still incarcerated and he's incarcerated in immigration court and Padilla has said that if it's based upon this conviction, his lawyer should have told him that. And then I believe he has standing because he's under some sort, and a lot of the case definitionally said, I don't have it in my notes, but say that as long as there's some sort of infirmity rather than being incarcerated, because no one's ever said incarcerated in the penitentiary means you have to be in jail, as long as there's something hanging over your head, probation, parole, supervision, collateral, or a consequence of the plea, then you have standing. I believe he has standing without, even if 410 is not a conviction because he's now in jail in immigration and that is a direct consequence of this case and Padilla has said it's not a collateral consequence. And I think the conviction or non-conviction is not a telling issue because the statute definitionally says as long as, and the case law says that as long as there's some sort of proceeding that he's facing, he's under the gun, so to speak, he has standing and he has some sort of, there has to be some way for him to get back to this court. So to use a form over substance, again, I think disagrees with SAC and this court in Davis and this court in Dale, because now we're just saying, okay, maybe there's a technicality, it wasn't a conviction, but he's still in jail. And the standing issue, the post-conviction petition, I think covers that. Thank you. Good morning. May it please the court, I'm Assistant Attorney General Catherine Saunders for the People. This court should affirm the appellate court's judgment because the appellate court correctly held that having completely discharged his sentence some 18 months before he even filed his post-conviction petition, the petitioner lacks standing under the Post-Conviction Hearing Act to bring his suit. Although my opponents correct that the courts of this state have liberally construed the phrase imprisoned in the penitentiary, the petitioner was not in custody on any definition of that phrase, any construction of that phrase. So imprisoned in the penitentiary has been broadly defined to include probation, parole, release on MSR, and even release on an appeal bond. The common thread here is that in each instance, Illinois is restricting the defendant's liberty as a result of an Illinois conviction. So the case law establishes that as long as one is in some sort of custody, when they file a petition, standing's not in question. But one who's completely served his conviction may not seek post-conviction relief. How does West figure into this? I thought the appellate court in SAC said that this court didn't people, I'm sorry, award, recognize that those convicted of misdemeanors may seek relief under the act. I'm sorry, I had difficulty here. Those who are convicted of misdemeanor. Yes, correct, this court created, in an exercise of this court's supervisory authority in people versus war, this court did fashion a remedy for misdemeanors to seek relief similar to that under the post-conviction. Even though not in prison. Pardon me? And the defendant is not in prison. Correct. That was in an exercise of this court's supervisory authority, yes. And how does it impact upon your position here? This court would, this court does have, of course, supervisory authority. It's virtually unlimited and could, in fact, fashion a remedy here. But I submit that it's a matter for the General Assembly, Your Honor, because post-conviction relief is not constitutionally required. It's a creature of statute. And the legislature has clearly defined their definition of standing here. Further, a petitioner really gives this court no reason or principled basis upon which to draw his line for standing. He argues fairness. He keeps repeating the moniker fairness unstressed in his brief that this petitioner had been here for 40 years. But he really provides no basis to draw the line, no basis upon which this court could draw a clean line, the way the standing is defined here under this court's precedent. For example, what if somebody had only been here 30 years, 20 years, six months? We don't really know if standing would be, you know, litigated in every instant. There's no clean line. What about somebody who pleaded guilty to a sexually violent offense and later was civilly committed under the Sexually Violent Persons Commitment Act? Can they then, do they then have standing to go back and challenge an expired conviction so as to undo, undermine their civil detention? Counsel, what about the Padilla case? How does that fit in here? Pardon me? The U.S. Padilla case? Padilla case, yes. Yes. Would you explain that to us? Yes. I agree with my opponent that Padilla calls into question the direct versus collateral consequences line that this court and other courts and federal circuits have drawn. But Padilla has nothing to do with standing. Standing comes under the Post-Conviction Hearing Act under the Imprisoned in the Penitentiary Language. A petitioner is actually incorrect when he says Padilla means he wins because all Padilla did was say that in that instance that counsel was deficient, his performance was deficient, and they remanded for consideration of the prejudice issue. And in footnote 12 of Padilla, the court noted that just as in Hill v. Lockhart, a petitioner who has admitted guilt, he's conceded the facts, is going to have a difficult time showing prejudice. And that would be a petitioner's situation here under the circumstances here. A petitioner's argument presumes the existence of a valid Strickland claim, but he can't show prejudice because under the context here, he would have to show a reasonable probability that he would not have pleaded guilty, that he would have instead gone to trial, that he wouldn't have been acquitted at trial, such that he wouldn't be subject to removal. But he can't show prejudice under the facts of this case here because the record strongly suggests that he would have been convicted regardless. He sold drugs, .9 grams of cocaine to an undercover agent of the DuPage Metropolitan Enforcement Group. There's no question, there's no dispute as to the amount of the drugs. And so he's really going to be unable, even if this court were to find that he had standing, he's going to be unable to demonstrate Strickland prejudice. I'd also dispute the performance prong as well. He refers to this very brief exchange, it's reproduced at page eight of his appendix, where the judge says no immigration problems, nothing like that, and his counsel says no, it's not an issue. I'd submit that that is not the court or his attorney advising him that there will be no adverse immigration consequences of his plea. Instead, as the court explained at the post-conviction hearing, the court was asking, inquiring of defense counsel whether his client was an alien, such that he knew whether or not to give the Section 113A admonishments. And really this is insufficient to demonstrate deficient performance, and his petition as well is unsupported by any affidavits either of himself or his attorney. So Padilla, again, it doesn't establish standing under the Post-Conviction Hearing Act, which really comes under the statutory language, and this court has drawn that line as if you're in state custody, any form of state custody, when you file, you have standing, and if you're not, you don't have standing. And the federal courts have drawn the same line as Justice Thomas noted earlier. The Post-Conviction Hearing Act is really analogous to the federal habeas statute, and the federal habeas statute uses the phrase in custody instead of imprisoned in the penitentiary, but it's been construed in essentially the same way, as long as one is in custody, some form of custody, probation or parole, when they file, then they can seek federal habeas relief from their state conviction. But once the sentence is completely expired, then they can no longer seek federal habeas relief. What's important here is that in the immigration context, several federal circuits have held that a defendant would completely serve his state sentence, but then was later held by federal authorities for immigration violations. When he attempted to attack his state conviction under the federal habeas statute, he said, well, no, you're no longer in custody on your state judgment. You can't bring, you have no standing, or it's actually jurisdictional federal habeas, but essentially the concept's the same. He couldn't seek federal habeas corpus relief. SAC really, that the petitioner relies on, SAC is really an outlier. No other court has followed it, and I submit that's because it's really not well-reasoned, as Justice Burke noted. SAC didn't take into account this court's holding in Martin Trigona, and even the first district from which it originated has disavowed it in People v. Rajagopal. And again, petitioner's fairness argument is complained essentially that if we don't follow SAC, or if you don't find standing, I'll have a right without a remedy, really carries a little weight because courts not infrequently draw these kind of lines in the interest of finality of judgment, statutes of limitations, for instance. So he's really situated no differently from anybody who discovers some point after having discharged his sentence that there was some constitutional infirmity in his underlying proceedings. Or after the limitations period is run, say, in a civil action, you see how subjected to substantial damages, but if you miss the statute of limitations in the interest of finality of judgment, we draw these lines. We spend a good deal of time talking about petitioner's underlying strickland claim, but he really has forfeited it, as Justice Thomas pointed out earlier, because he waited until his reply brief to raise it. But again, even if this Court would find that he hadn't waived it or forfeited it, and that he had standing, as I pointed out, he's failed to demonstrate deficient performance. This brief exchange between the judge and trial counsel does not demonstrate that counsel misadvised his client about the immigration consequences of his plea. And in fact, it's entirely consistent with a situation perhaps where the client advised his attorney that he was not an alien, because there's really no reason for his attorney to have advised the judge that there were no immigration consequences if, in fact, he knew that his client was an alien and that the Section 113A admonishments would be required. In sum, then, having completely discharged his sentence, his Section 410 probation, well over a year before he filed his petition, the petitioner simply just lacked standing to file for relief under the Post-Conviction Hearing Act. His current custody, the only current restraint on his liberty, results from federal immigration authorities, federal immigration law, and not from a state conviction. As I mentioned, he forfeited his strickland claim, but if this Court were to conclude that he hadn't forfeited it and that he had standing, we'd ask that this Court remand for further proceedings consistent with Padilla v. Kentucky in light of this possibly new distinction between direct and collateral consequences. This matter was briefed pre-Padilla. If there are no further questions, we'd ask that this Court affirm the judgment of the appellate court. Thank you, Mr. Serrano. Mr. Serrano, the State mentioned that the Post-Conviction Hearing Act is purely statutory, and in what we did under our supervisory authority went against, I would think, the intent of the legislature. What you're seeking, isn't it better taken to the legislature than to this Court? I don't think so, and I don't think so because all laws are statutorily based, but the impact of this, this is the only way now that a person has to pursue a post-conviction petition. Even in Martin Tragona, the Court said that all persons whose liberty is constrained as a result of a criminal conviction, post-conviction is a complete remedial procedure to ensure that a defendant is not deprived of liberty without due process of law. So, I mean, this is a due process issue. Even though it's statutorily based and it's created statutorily, it's the only way that a defendant can come before a court and seek to avoid a deprivation of due process of law. It's constitutionally based. The argument is constitutionally based. It's inherent in having an ability to go before a court. And the standing issue, the reason courts have said, imprisoned in the penitentiary under some court order or some court supervision, bars that is because they didn't want a flood of litigation, which wouldn't happen here because there is a statute now that requires it, requires admonishments, but they didn't want a flood of litigation from people just seeking to get their records cleaned for collateral proceedings. And now Padilla says it's not a collateral proceeding. It's intricately related to the plea of guilty. But he's no longer deprived of liberty. Well, he is. But under federal law, not under state law. And I agree that there might have been a distinction at some point, even though I think SAC is better reasoned than other appellate court cases. But now, in light of Padilla, Padilla has said it's not collateral. He's in jail because of this offense. Even though it's a separate civil proceeding, even though it's civil in nature and it's federal in nature and it's deportation, it's intricately related with the performance of his counsel. And it's a fact of life now that there are a lot of instances where people get deported based upon a plea of guilty in court, and because that is so intricately related and so related to criminal law and pleas, that he's in jail on this offense. The senator says that the counsel's conduct doesn't rise to ineffective assistance of counsel. I really don't understand the argument. The argument is Strickland has said, or Strickland says it, Padilla says it. The judge asked, are there immigration consequences? The lawyer said no. The pleaded facts in this case by Mr. Carrera was that he relied on that advice by his attorney, both prior to and at the time of his plea right in front of the judge. He told the judge there's no immigration consequences, so he pled guilty. And that's what happened in Padilla, too. Same thing. So I don't see a better case factually, because usually there's a dispute. The lawyer will come in or the state will submit an affidavit saying we talked about immigration consequences. Or I didn't tell him this, but I told him this, or he misunderstood. This is a case right on the record, and the state never responded. Jesus Carrera said in his petition that he told me before I pled guilty that there's no immigration consequences. I told him. I was on a green card. And right in front of the judge he said there's no immigration consequences. So I don't know how you get around that. I mean, we try to get around facts a lot as lawyers, but that's on the record. I'd like to talk about Rajagopal for a second. Rajagopal, counsel brought up that SAC didn't discuss it, and Rajagopal, if I'm pronouncing it correctly, is decisive. But Rajagopal is a case that said whether the specter of deportation constitutes imprisonment for purposes of the Post-Conviction Act, for the purposes of the Post-Conviction Act, quote, in custody provision, has not been answered. And that's why I came to this court seeking an answer, because Rajagopal says there is no answer. I think Padilla answered that question. I think when Padilla said that it's not a collateral consequence, it's part of the plea, that the question is answered. He has standing because it's all part of effective counsel in the case at bar. He's in jail, and he's in jail because of this offense and for no other reason. Even though it's separate civil, it's so related, according to Padilla, that it's part of this case. So even though SAC didn't disavow Rajagopal, Rajagopal didn't answer the question and asked for an answer to the question. Same thing the judge did in this case. If you read the record, he first said, well, he has standing, but maybe a court of appeals will tell me I'm wrong, and I think his lawyer wasn't deficient, and that was his ruling, the lawyer wasn't deficient. But Strickland says, and Padilla says, if you give misadvice or even nonadvice concerning the immigration consequences, you're a deficient lawyer. Padilla, at the end of the day, establishes standing. In this court, back to the original question, I'm running in circles here, but back to Your Honor's original question concerning the statutory nature as opposed to the due process nature, this court in Dale and in People v. Davis said, respecting the act's function, 122, there are obvious advantages in purging oneself of the stigma and disabilities which attend to criminal conviction, and that construing the act to preclude relief in every case in which the petition is not filed and the hearing completed before imprisonment ends is not contemplated by its remedial nature. I mean, this court said that in Davis. In Davis, 1968, before the standing issue, I guess the standing issue was actually discussed because it was a situation where a person filed and then they got out of jail. But in Davis, this court said this is a due process argument. Even though it's statutory in nature, even though it's created statutorily, this, just to say you're out of jail, you lose, is not fair, and that's my fairness issue. I'm not saying Jesus is a great guy, even though he is. I'm not saying he has a family and he's been here 40 years, even though he has. I'm saying that he has a due process right, and it's based upon fairness. This is based upon this court's ruling, and it's based upon this court's supervisory authority, and the court already said in every case in which the petition is not filed and the hearing completed before imprisonment ends is not contemplated by the remedial nature of the statute. And I don't get here a lot, so I always overstay my welcome, so thank you. Thank you. Partial case number 109294 will be taken under advisement as agenda number 16.